IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARLON CANADY,

    Plaintiff,

v.                               Civil Action No. 3:19CV725

LEON DIXON, et al.,

    Defendants.

**MEMORANDUM OPINION**

Marlon Canady, a Virginia inmate proceeding pro se and in forma pauperis, filed this 42 U.S.C. § 1983 action.[1] The matter is before the Court on the Motion to Dismiss filed by Leon Dixon, D.A. Lewis, and Mark Amonette ("Defendants").[2] Canady has responded. For the reasons set forth below, the Motion to Dismiss will be granted in part and denied in part.

**I. STANDARD FOR A MOTION TO DISMISS**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin,

---

[1] The Court employs that pagination assigned by the CM/ECF docketing submission for the citations to the parties' submissions. The Court corrects the spelling, punctuation, and capitalization.

[2] Dixon is a doctor at Nottoway Correctional Center ("NCC"). (ECF No. 1-1, at 1.) Lewis is the Grievance Coordinator at NCC. (Id.) Amonette is the Chief Medical Director for the Virginia Department of Corrections ("VDOC"). (Id.)

980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (second alteration in original). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id. (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," id. (citation omitted), stating a claim that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp., 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes pro se complaints, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. See Brock v. Carroll, 107 F.3d 241, 242-43 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

Canady's thirty-six-page Complaint contains separate sections listing his "FACTS" and his "CAUSE[S] OF ACTION" or claims. (ECF No. 1-1, at 7, 24.) In his facts section, Canady makes passing reference to various constitutional provisions that are not always repeated when he specifies his legal claims. The Court declines to construct claims from the passing legal quips in the facts section of the Complaint. Beaudett, 775 F.2d at 1278 (observing that "[d]istrict judges are not mind readers. Even in the case of

3

pro se litigants, they cannot be expected to construct full blown claims from sentence fragments"). Instead, the Court will address only those legal claims specified by Canady in his "CAUSE[S] OF ACTION" sections of his Complaint.

## II. ALLEGATIONS

On November 14, 2016, Canady signed up for sick call at NCC to see the doctor regarding a staph infection. (ECF No. 1-1 ¶ 10.) Nevertheless, Canady was not seen in the medical department in November and December of 2016. (Id. ¶ 11.) Canady was a housing unit shower cleaner and believed he had contracted Methicillin Resistant Staphylococcus Aureus ("MRSA") infection. (Id. ¶ 12.) Between November and April 6, 2017, Canady was suffering from painful blisters on his toes, thighs, calves and arms. (Id. ¶ 13.) The blisters bled and oozed pus when scratched. (Id.)

### A. Canady's April 6, 2017 Interaction With Dr. Dixon

On April 6, 2017, Canady was seen by Dr. Dixon. (Id. ¶ 14.) Canady explained the history of his ailments, his job as a shower cleaner, and his belief that he had a MRSA infection. (Id. ¶¶ 14, 15.) Dr. Dixon "insisted the blisters [were] caused by dry skin." (Id. ¶ 16.) Canady "disagreed with Dixon's diagnosis" and informed Dr. Dixon that he believed that he had a MRSA infection. (Id.) Dr. Dixon told Canady to "to 'SHUT UP' and listen to him, and if [Canady] did not shut up and listen to him . . ., he (Dixon) was

not going to treat [Canady]." (Id. ¶ 17.) When Canady continued to attempt to explain to Dr. Dixon that Dixon could not feel Canady's pain, Dr. Dixon told Canady, "'get out, . . . I'm not going to treat you, get out.'" (Id. ¶ 18.) As Canady was exiting the exam room, Dr. Dixon told Canady to change his job. (Id. ¶ 19.)

### B. Canady's Informal Complaints and Grievances In The Wake Of The April 6, 2017 Medical Appointment

On April 19, 2017, Canady submitted an informal complaint with five attached pages to officials at NCC complaining about Dr. Dixon's actions and his incompetence. (Id. ¶ 21.) Defendant Lewis, the grievance coordinator, noted on the informal complaint that "continuations to informal complaints are not allowed nor addressed. Follow directions. Attachment returned." (ECF No. 1-2, at 2.) Defendant Lewis than passed the informal complaint to the nurse on the medical unit, who responded to the informal complaint. (Id.)

On May 3, 2017, Canady filed a grievance against Dr. Dixon. (ECF No. 1-1 ¶ 28.) "Defendant Lewis again hindered [Canady's] right to successfully file a grievance to resolve his complaint." (Id.) In that grievance, Canady complained about Dr. Dixon's treatment and Defendant Lewis's refusal to process all the attachments to his informal complaint described above. (ECF No. 1-2, at 10.) In the portion of the grievance where Canady was

supposed to list what action he wanted taken, Canady stated: "I want to be treated by medical for my complaint, and I want the institutional ombudsman Lewis to file the entire complaint (attachments) . . . ." (Id.) Defendant Lewis returned the grievance to Canady unprocessed because she stated it was a "Request for services." (Id. at 11.) Canady pursued an appeal to the Regional Ombudsman regarding Defendant Lewis's refusal to process his grievance. (Id. at 11.) The Regional Ombudsman Hawey rejected Canady's appeal of the intake decision because Canady had exceeded the "5 day time limit for review." (Id.)

On May 8, 2017, Canady filed another grievance about Defendant Lewis's interference with his filing of informal complaints by failing to stamp and process his attachments to his informal complaint. (Id. at 12.) Lewis returned the grievance to Canady unprocessed and marked the box, "Does not affect you personally (This issue did not cause you personal loss or harm)." (Id. at 13.) Canady appealed Lewis's intake decision to the Regional Ombudsman. (Id. at 13.) On May 17, 2017, Regional Ombudsman Hawey upheld Lewis's intake decision. (Id.)

C. **Canady's Medical Condition After April 2017**

Following the April 6, 2017 medical encounter, Canady's medical condition slowly deteriorated. (ECF No. 1-1 ¶ 34.) In addition to the blisters, Canady developed plantar fasciitis and bone spurs in his left foot. (Id.) On July 31, 2017, Canady was

6

seen at sick call and diagnosed with plantar fasciitis. (Id. ¶ 35.)

On August 1, 2017, Canady filed an informal complaint and stated he could not walk on the heel of his left foot. (Id. ¶ 38.) On that same day, he was seen at sick call and told by the nurse that he needed antibiotics. (Id.) On August 3, 2017, Canady filed an filed an emergency grievance complaining that he was in severe pain and was being denied adequate medical treatment. (Id. ¶ 39.)

On Friday, August 4, 2017, Dr. Dixon diagnosed Canady with bone spurs in his left foot and an infection. (Id. ¶ 40.) Dr. Dixon prescribed antibiotics twice a day for fourteen days. (Id.) Canady's MRSA infection became worse over the weekend. (Id. ¶ 41.) Canady "was unable to eat," or move around and spent the weekend vomiting. (Id.) Finally, on Sunday, August 6, 2017, Canady's prescription for antibiotics began. (Id.)

By August 8, 2017, Canady "was extremely ill" from his MRSA infection. (Id. ¶ 42.) "A large knot (hard and painful) half the size of a soft ball had formed on the back of [Canady's] right thigh." (Id.) Dr. Dixon had Canady transferred to the emergency room at Centra Southside Community Hospital. (Id. ¶ 43.) At Centra Southside Community Hospital, Canady was diagnosed with a heel spur, plantar fasciitis, and cellulitis, "MRSA suspected." (Id. ¶ 44.) After four hours of receiving intravenous antibiotics,

Canady's condition stabilized. (Id. ¶ 45.) Canady was prescribed a fourteen-day prescription of oral antibiotics. (Id.)

On August 10, 2017, Dr. Dixon decided to withhold treatment on Canady's bone-spur until the MRSA infection was resolved. (Id. ¶ 49.)

On August 18, 2017, Canady stopped taking antibiotics. (Id. ¶ 50.) Canady contends that he had been overprescribed antibiotics and this caused him to vomit repeatedly and to fall on the floor. (Id. ¶¶ 50-51.)

Dr. Dixon failed to schedule a follow-up appointment for Canady's bone spur and plantar fasciitis. (Id. ¶ 52.) Over the next two years, Dr. Dixon continued to deny Canady treatment for his bone spurs and plantar fasciitis. (Id. ¶ 58.) Canady is unable to walk or jog for very long. (Id. ¶ 59.)

### D. Canady's Grievances From August 31, 2017 Onward

On August 31, 2017, Canady submitted a grievance complaining that Dr. Dixon had done nothing to treat his foot pain. (Id. ¶ 53.) On September 1, 2017, Defendant Lewis returned the grievance to Canady because Canady had not submitted evidence that demonstrated that Canady had attempted to utilize an informal complaint prior to filing his grievance. (Id. ¶ 54.) Canady contends that this was a purposeful attempt by Defendant Lewis to interfere with Canady's medical care, because Canady had submitted

his informal complaint along with his grievance to Defendant Lewis. (Id.)

Canady pursued an appeal of Defendant Lewis's refusal to process his grievance at intake because of the purported lack of documentation that he had filed an informal complaint. (ECF No. 1-3 at 9.) On September 27, 2017, Regional Ombudsman Boone rejected Canady's appeal because Canady had exceeded "the 5-day time limit for review." (Id.)

### III. Canady's Claims

Claim 1   Defendant Dixon violated Canady's right to adequate medical care under the Eighth Amendment. On April 6, 2017, Dr. Dixon refused to treat Canady's MRSA infection and told Canady to shut up and get out. After that date, the MRSA infection became progressively worse.

Claim 2   (a) Defendant Lewis violated Canady's rights under the First Amendment when she interfered with Canady's attempt to file informal complaints and grievances.
(b) Defendant Lewis violated Canady's Eighth Amendment right to adequate medical care by interfering with Canady's informal complaints and grievances complaining about his medical care.

Claim 3   Defendant Amonette has supervisory liability for the constitutional violations of Dr. Dixon because Defendant Amonette refused to respond to Canady's grievance appeals regarding the inadequate treatment Canady received for his MRSA infection, plantar fasciitis, and heel spur.

The Court notes that, in his Response to the Motion to Dismiss, Canady contends that he also brought a claim against Dr.

9

Dixon for failing to provide adequate medical care for his plantar fasciitis. (ECF No. 23, at 3.) Canady did not plead such a claim in his Complaint.[3] Moreover, in Response to the Motion to Dismiss, where he recites the facts that support his putative claim of inadequate medical care for his foot, Canady relies on facts not recited in the Complaint. (Id. at 41-42.) "[N]ew legal theories must be added by way of amended pleadings, not by arguments asserted in legal briefs." Equity in Athletics, Inc. v. Dep't of Educ., 504 F. Supp. 2d 88, 111 (W.D. Va. 2007) (citations omitted); see E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 847 F. Supp. 2d 843, 851 n.9 (E.D. Va. 2012). Canady remains free to file an amended complaint raising a claim of inadequate medical care against Dr. Dixon, but the Court refuses to consider one on the materials currently before it.

Canady also states that he "reserves the right to file a future retaliatory transfer claim . . . ." (Id. ¶ 83.) Canady has not moved to amend to file such a claim, and the undeveloped retaliatory transfer claim will receive no further consideration.

---

[3] In the portion of the Complaint wherein he specified his claims against Dr. Dixon, Canady did not mention his foot problems. (ECF No. 1-1, at 24-26.)

10

## IV. Analysis

### A. Eighth Amendment Principles

To state an Eighth Amendment claim, an inmate must allege facts that indicate "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts to suggest that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." Strickler v. Waters, 989 F.2d 1375, 1380 n.3 (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (quoting Strickler, 989 F.2d at 1381). With respect to claims of inadequate medical treatment under the Eighth Amendment, "the objective component is satisfied by a serious medical condition." Quinones, 145 F.3d at 167.

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. See

11

Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837. Farmer teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." Quinones, 145 F.3d at 168 (citing Farmer, 511 U.S. at 837); see Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (quoting Rich, 129 F.3d at 340 n.2).

In order to state an Eighth Amendment claim for denial of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to

12

serious medical needs." Estelle, 429 U.S. at 106. "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)), overruled in part on other grounds by Farmer, 511 U.S. at 837. Furthermore, in evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. Hudson, 503 U.S. at 9 (citing Estelle, 429 U.S. at 103-04). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977).

**B. Defendant Dixon**

Defendants contend that Canady fails to state a viable claim against Dr. Dixon because:

> Plaintiff's first allegation of action or inaction by Dr. Dixon relates to Plaintiff's treatment on April 6, 2017. As to that interaction, Plaintiff does not allege that Dr. Dixon actually denied him treatment. Indeed, Plaintiff's own allegations are that Dr. Dixon treated Plaintiff but Plaintiff disagreed with Dr. Dixon's professional diagnosis.

13

(ECF No. 17, at 9-10 (internal citation omitted).) Under parallel circumstances, the United States Court of Appeals for the Fourth Circuit has concluded that allegations like those pled by Canady amount to deliberate indifference because, read in favor of the plaintiff, they reflect a refusal to exercise medical judgment rather than a disagreement over the proper course of medical care. See Griffin v. Mortier, No. 19-7171, 2020 WL 7023895, at *4 (4th Cir. Nov. 30, 2020).

> In Griffin, the complaint alleged:
>
>> [Nurse] Mortier knew that Griffin suffered a seizure, fell, and hit his head. The complaint further allege[d] that Mortier knew that Griffin had ear pain after the fall and that Mortier observed Griffin bleeding from the nose and acting in an unusual and confused manner. According to the complaint, rather than evaluate, examine, or treat Griffin, Mortier simply placed him in a holding cell. While in the holding cell, Griffin became even more confused, but no medical action was taken. Only after Griffin experienced a second seizure and hit his head on the floor of the holding cell did he receive any medical care.

Id. at *3. The Fourth Circuit rejected Mortier's arguments against deliberate indifference "by characterizing [the plaintiff's] claims as presenting mere disagreements over the proper course of treatment for his serious medical conditions." Id. at *4. The Fourth Circuit observed,

> those characterizations are inaccurate because the complaint alleges that Griffin received no treatment at all until he suffered two additional seizures. See Gordon, 937 F.3d at 359 n.14 (rejecting argument that plaintiff's deliberate indifference claim should fail because he merely disagreed with course of treatment and

14

> explaining that plaintiff's claim was predicated on "receiv[ing] <u>no treatment at all</u>"). And while Mortier correctly observes that, in the Eighth Amendment context, questions of medical judgment are generally "not subject to judicial review," <u>Russell v. Sheffer</u>, 528 F.2d 318, 319 (4th Cir. 1975), Griffin's complaint read in his favor does not indicate that Mortier exercised her medical judgment at all in these circumstances.

<u>Id.</u>

Here, read in Canady's favor, the Complaint indicates Dr. Dixon failed to provide any treatment at all for Canady's ailments on April 6, 2017. Instead, Dr. Dixon became upset with Canady and kicked him out of the exam room without exercising any reasoned medical judgment with respect to Canady's ailments. <u>Id.</u> Thereafter, Canady became terribly ill and was required to be transported to the hospital. Accordingly, Defendants' Motion to Dismiss Claim 1 will be denied.

### C.   Defendant Lewis

In Claim 2(a), Canady contends that Defendant Lewis violated his rights under the First Amendment when she interfered with his attempts to file informal complaints and grievances. Canady is wrong. "[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process . . . ." <u>Booker v. S.C. Dep't of Corr.</u>, 855 F.3d 533, 541 (4th Cir. 2017); <u>see</u> <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to

15

grievance procedures or access to any such procedure voluntarily established by a state."); Doans v. Rice, No. 87-7244, 1987 WL 38813, at *1 (4th Cir. Oct. 15, 1987) ("Because inmate grievance procedures are not constitutionally required in state prison systems, the failure to follow grievance procedures does not give rise to a § 1983 claim."). Moreover, the "failure of a prison official to follow prison procedures does not, standing alone, amount to a constitutional violation." Morant v. Vaughn, No. 2:08-cv-155, 2009 WL 6651941, at *6 (E.D. Va. Jan. 8, 2009). Given the foregoing authority, Canady has failed to state a First Amendment claim based on Defendant Lewis's interference with his attempts to file informal complaints and grievances. Accordingly, Claim 2(a) will be dismissed.

Defendants also seek the dismissal of Canady's claim that Defendant Lewis violated his Eighth Amendment right to adequate medical care by her failure to properly process his informal complaints and grievances. "[I]n the context of cases involving prisoner medical care claims, it is possible for officials not directly involved in the alleged constitutional violation to be put on sufficient notice of the violation that their failure to act can lead to a claim under Section 1983." Rowe v. Clarke, No. 3:18-CV-780, 2019 WL 2477612, at *4 (E.D. Va. June 13, 2019) (citing Vance v. Peters, 97 F.3d 987, 992-94 (7th Cir. 1996)). Defendants fail to acknowledge this line of jurisprudence and fail

16

to explain why the allegations here are insufficient to state an Eighth Amendment claim against Defendant Lewis. Accordingly, Defendants' Motion to Dismiss Claim 2(b) will be denied.

### D. Defendant Amonette

In Claim 3, Canady contends that Defendant Amonette has supervisory liability for constitutional violations of Dr. Dixon because Defendant Amonette refused to respond to Canady's grievance appeals regarding the inadequate treatment Canady received for his MRSA infection, plantar fasciitis, and heel spur. In order to state a § 1983 claim for supervisory liability, a plaintiff must allege:

> (1) that the supervisor had actual or constructive knowledge that h[er] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014) (alteration in original) (quoting Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)).

Canady's own submissions rather conclusively demonstrate that Defendant Amonette, who is the Chief Medical Director for the VDOC, never saw these grievance appeals. Instead, the appeals of the intake decisions were processed in the Regional Ombudsman's

Office, where the intake decision was upheld or the appeal was rejected as untimely. Against this factual backdrop, Canady's allegation that Defendant Amonette knew of his medical issues and turned a blind eye to the same (ECF 1-1 ¶¶ 55-57) is entirely conclusory and is rejected. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009). Canady fails to allege facts that plausibly indicate that Defendant Amonette knew of and ignored any inadequate medical care with respect to Canady. Accordingly, Claim 3 will be dismissed.

## V. Conclusion

For the foregoing reasons, the Motion to Dismiss will be granted in part and denied in part. Claim 2(a) and Claim 3 will be dismissed. Any party wishing to file a motion for summary judgment must do so within sixty (60) days of the date of entry hereof.

An appropriate Order will accompany this Memorandum Opinion.

/s/ REP

Robert E. Payne
Senior United States District Judge

Date: January 8, 2021
Richmond, Virginia