

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARLON CANADY,

    Plaintiff,

v.                              Civil Action No. 3:19CV725

LEON DIXON, et al.,

    Defendants.

### MEMORANDUM OPINION

Marlon Canady, a Virginia inmate proceeding pro se and in forma pauperis, filed this 42 U.S.C. § 1983 action.[1] Canady raised the following claims for relief in his Complaint:

    Claim 1    Defendant Dixon violated Canady's right to adequate medical care under the Eighth Amendment. On April 6, 2017, Dr. Dixon refused to treat Canady's MRSA infection and told Canady to shut up and get out. After that date, the MRSA infection became progressively worse.

    Claim 2    (a)  Defendant Lewis violated Canady's rights under the First Amendment when she interfered with Canady's attempt to file informal complaints and grievances.

                 (b)  Defendant Lewis violated Canady's Eighth Amendment right to adequate medical care by interfering with Canady's informal complaints and grievances complaining about his medical care.

    Claim 3    Defendant Amonette has supervisory liability for the constitutional violations of Dr. Dixon because Defendant Amonette refused to respond to Canady's grievance appeals regarding the inadequate

_____

[1] The Court employs that pagination assigned by the CM/ECF docketing submission for the citations to the parties' submissions. The Court corrects the spelling, punctuation, grammar, and capitalization in the quotations from the parties' submissions.

treatment Canady received for his MRSA infection, plantar fasciitis, and heel spur.

By Memorandum Opinion and Order entered on January 11, 2021, the dismissed Claims 2(a) and Claim 3.    See Canady v. Dixon, No. 3:19CV725, 2021 WL 96248, at *6-7 (E.D. Va. Jan. 11, 2021) (dismissing Claim 2(a) because Canady "failed to state a First Amendment claim based on Defendant Lewis's interference with his attempts to file informal complaints and grievances"); id. at *7 (dismissing Claim 3 because Canady failed "to allege facts that plausibly indicate that Defendant Amonette knew of and ignored any inadequate medical care with respect to Canady").

The matter is before the Court on the STATEMENT NOTING DEATH filed by counsel for Defendant Lewis noting the death of Defendant Dixon (ECF No. 33); DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 40); and PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 36). For the reasons that follow, Claim 1 against Defendant Dixon will be dismissed, Defendant's Motion for Summary Judgment will be granted, and Plaintiff's Motion for Partial Summary Judgment will be denied.

## I.   THE DEATH OF DEFENDANT DIXON

Federal Rule of Civil Procedure 25 provides, in pertinent part:

> **(a) Death.**
> **(1) Substitution if the Claim Is Not Extinguished.** If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A

2

motion for substitution may be made by any party or by the decedent's successor or representative.   If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

*(2) Continuation Among the Remaining Parties.*   After a party's death, if the right sought to be enforced survives only to or against the remaining parties, the action does not abate, but proceeds in favor of or against the remaining parties. The death should be noted on the record.

*(3) Service.* A motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4.   A statement noting death must be served in the same manner.   Service may be made in any judicial district.

Fed. R. Civ. P. 25(a).  On May 7, 2021, counsel for Defendant Lewis filed a statement noting the death of Defendant Dixon on September 11, 2020.  (ECF No. 33, at 1.)  More than ninety days have passed and Canady has not filed an appropriate motion for substitution. Accordingly, Claim 1, against Defendant Dixon, will be dismissed.

## II.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion

3

may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). However, a mere "scintilla of evidence" will not preclude summary judgment. Anderson, 477 U.S. at 251 (citing Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1871)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." Id. (quoting Munson, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

4

In support of her Motion for Summary Judgment, Defendant Lewis submitted her affidavit ("Lewis Aff.," ECF No. 41-1, at 1-6) and a copy of Operating Procedure 866.1, Offender Grievance Procedure ("Operating Procedure § 866.1," ECF No. 41-1, at 7-22). In support of his Motion for Partial Summary Judgment and in opposition to the Defendant Lewis's Motion for Summary Judgment, Canady submitted his own declaration ("Canady Decl.," ECF No. 37-1) and host of other documents that the Court refers to by their CM/ECF designation. Additionally, Canady's Complaint is sworn to under penalty of perjury.

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motions for Summary Judgment. All permissible inferences are drawn in favor of Canady.

### III. SUMMARY OF PERTINENT UNDISPUTED FACTS

### A. History Of Canady's Medical Condition

On November 14, 2016, Canady signed up for sick call at Nottoway Correction Center ("NCC") to see the doctor about a staph infection. (Canady Decl. ¶ 5.) Between November 14, 2016 and April 6, 2017, Canady was "suffering from painful blisters on his toes, thighs, calves and arms." (Id. ¶ 7.) "The blisters bled and oozed pus when scratched." (Id.)

On April 6, 2017, Canady was seen by Dr. Dixon. (Id. ¶ 9.)

5

Canady explained the history of his ailments, his job as a shower cleaner, and his belief that he had a MRSA infection. (Id.)  Dr. Dixon "insisted the blister[s] were caused by dry skin." (Id. ¶ 10.)  Canady "disagreed with Dixon's diagnosis" and informed Dr. Dixon that he believed that he had a MRSA infection. (Id.)  Dr. Dixon told Canady to "to 'SHUT UP' and listen to him, and if [Canady] didn't shut up and listen to him . . ., he (Dixon) was not going to treat [Canady]." (Id.)  When Canady continued by stating that Dr. Dixon could not feel Canady's pain, Dr. Dixon told Canady, "'get out, . . . I'm not going to treat you, get out.'" (Id.)  Dr. Dixon told Canady that he needed to change his occupation as a shower cleaner. (Id.)  Dr. Dixon noted in Canady's medical record that, "inmate does not want to listen to the problem that he has - he needs to change his occupation because he has dry skin that is worsened by his working in hot water." (ECF No. 1-4, at 5.)

Four days later, on April 10, 2017, Canady also was seen and reevaluated by a Nurse Practitioner Bendall, who also concluded that Canady merely suffered from dry skin. (ECF No. 1-2, at 5.)

B.   **Canady's Informal Complaints And Grievances In The Wake Of The April 6, 2017 Medical Appointment**

1.   **April 19, 2017 Informal Complaint**

On April 19, 2017, Canady submitted an informal complaint to officials at NCC complaining about Dr. Dixon's actions on April 6, 2017.  (ECF No. 1-2, at 2.)  The first instruction on the printed form for filling out the informal complaint directs the inmate to "[b]iefly write your issue in the space provided on the Informal Complaint form."  (Id.)  In that space, Canady wrote:

> April 6, 2017, Doctor Dixon has denied me medical treatment and refused to treat me completely because I would not agree with his diagnosis of my medical problem. Dr. Dixon told me to shut up and if I don't listen to him he would not treat me.  I am a shower cleaner and strongly believe that I had caught an infectious disease.   Methicillin   Resistant   Staphylococcus (M.R.S.A.). O.P. 740.1 (See Attachment).

(Id.)

Canady appended to his informal complaint a five-page attachment.  In the attachment, Canady stated his belief he had a staph infection and Dr. Dixon's insistence that Canady's blisters were caused by dry skin, and that Dr. Dixon had refused to further treat him when he refused to shut up and listen.  (Id. at 3-4.) Additionally, Canady acknowledged that, on April 10, 2017, he had been seen and reevaluated by a Nurse Practitioner Bendall, who also concluded that Canady merely suffered from dry skin.  (Id. at 5.)  Canady stated he had "blisters, redness, and light bleeding on my left hand, forearm, and back of both arms.  My symptoms are

not symptoms of dry skin. The condition comes and goes. Sometimes it lasts as long as two weeks, then clears up, and re-occurs a month or two months later." (Id. at 6.)

Defendant Lewis, the grievance coordinator, noted on the informal complaint that "continuations to informal complaints are not allowed nor addressed. Follow directions. Attachment returned." (Id. at 2.)[2] Defendant Lewis than passed the informal complaint to a nurse on the medical unit, who responded, "Dr. Dixon advised you change your occupation due to the medical condition you presented with. Thank you!" (Id.)

On April 27, 2017, Canady submitted an informal complaint wherein he complained that Defendant Lewis had not logged into the grievance system the additional pages that Canady had attached to prior informal complaint. (Lewis Aff. ¶ 14.) Defendant Lewis responded that the directions on the informal complaint require inmates to briefly explain their issue in the space provided on the form. (ECF No. 1-2, at 9.)

---

[2] Defendant Lewis circled the instruction on the informal complaint form that stated, "Briefly write your issue in the space provided on the Informal Complaint form." (ECF No. 1-4, at 2.)

8

### 2.   May 3, 2017 Grievance

On May 3, 2017, Canady filed a regular grievance wherein he complained about Dr. Dixon's treatment and Defendant Lewis's refusal to process all the attachments to his informal complaint described above.   (ECF No. 1-2, at 10.)   In the portion of the grievance where Canady was supposed to list what action he wanted taken, Canady stated:   "I want to be treated by medical for my complaint, and I want the institutional ombudsman Lewis to file the entire complaint (attachments) . . . ."   (Id.)   Defendant Lewis returned the grievance to Canady unprocessed because she stated it was a "Request for services."   (Id. at 11.)   Canady pursued an appeal to the Regional Ombudsman regarding Defendant Lewis's refusal to process his grievance.   (Id.)   The Regional Ombudsman Hawey rejected Canady's appeal of the intake decision because Canady had exceeded the "5 day time limit for review."   (Id.)

### 3.   May 8, 2017 Grievance

On or about May 8, 2017, Canady filed another grievance about Defendant Lewis's interference with his filing of informal complaints by failing to stamp and process his attachments to his informal complaint.   (Id. at 12.)   Defendant Lewis returned the grievance to Canady unprocessed and marked the box, "Does not affect you personally (This issue did not cause you personal loss or harm)."   (Id. at 13.)   Canady appealed Lewis's intake decision

to the Regional Ombudsman.  (Id.)  On May 17, 2017, Regional Ombudsman Hawey upheld Lewis's intake decision.  (Id.)

###  C.  Canady's Medical Condition After April 2017

Following the April 6, 2017 medical encounter, Canady's swears that his "medical condition slowly [got] worse."  (ECF No. 1-1 ¶ 34.)  Nevertheless, Canady fails to direct the Court to evidence indicating that he sought further medical care for his blisters and any related illness from April 10, 2017 until the end of July of that year.

On July 25, 2017, Canady was seen in the medical department where his chief complaint was pain in heel of his left foot.  (ECF No. 1-4, at 6.)  The nurse prescribed ibuprofen and referred Canady to see Dr. Dixon.  (Id.)

On August 1, 2017, Canady was seen at sick call where his chief complaint was pain in his left foot, on the bottom and heel. (ECF No. 1-4, at 7.)  Canady also reported to the nurse a "new onset [of] multiple spider bites [on] outer/inner thighs."  (Id.) The nurse noted "multiple raised hard, red/warm/rashes inner/outer thighs [and] top of knee & center pubic area [without] drainage." (Id.)  The nurse determined that the insect bites and Canady's foot and heel pain warranted his referral to Dr. Dixon."  (Id.) Canady asserts that the nurse told him that he needed antibiotics. (ECF No. 1-1 ¶ 38.)

On Friday, August 4, 2017, Dr. Dixon diagnosed Canady with bone spurs in his left foot. (Id. ¶ 40.) It was noted in Canady's medical records that Canady had multiple spider bites on his legs and groin area. (ECF No. 1-4, at 8.) Dr. Dixon prescribed antibiotics twice a day for fourteen days. (ECF No. 1-1 ¶ 40.) It is unclear whether anyone had diagnosed Canady with a MRSA infection at this juncture.

Over the weekend, Canady became sicker. (Id. ¶ 41.) Canady "was unable to eat," or move around and spent the weekend vomiting. (Id.) Finally, on Sunday, August 6, 2017, Canady's prescription for antibiotics began. (Id.)

By August 8, 2017, Canady "was extremely ill." (Id. ¶ 42.) "A large knot (hard and painful) half the size of a soft ball had formed on the back of [Canady's] right thigh." (Id.) Dr. Dixon had Canady transferred to the emergency room at Centra Southside Community Hospital. (Id. ¶ 43.) At Centra Southside Community Hospital, Canady was diagnosed with a heel spur, plantar fasciitis, and cellulitis, "MRSA suspected." (Id. ¶ 44.) After four hours of receiving intravenous antibiotics, Canady's condition stabilized. (Id. ¶ 45.) Canady was prescribed a fourteen-day prescription of oral antibiotics. (Id.)

On August 10, 2017, Dr. Dixon decided to withhold treatment on Canady's bone-spur until the MRSA infection was resolved. (Id. ¶ 49.)

11

On August 18, 2017, Canady stopped taking antibiotics. (Id. ¶ 50.) Canady contends that he had been overprescribed antibiotics and this caused him to vomit repeatedly and to fall on the floor. (Id. ¶¶ 50-51.)

### D. July 31, 2017 Emergency Grievance 092760

On or about July 31, 2017, Canady submitted an Emergency Grievance wherein he stated:

> I am in severe pain, suffering for two weeks. I'm being denied adequate medical treatment. 7-25-17, I was seen at sick call for what I believe to be a broken/fracture bone in the heel of my left foot. I was diagnosed at sick call with plantar fasciitis. Extremely difficult and painful to walk, stand up, or sit down. Again, I was seen at sick call on 8-1-17 for multiple insect bites, and was told I need antibiotics. Insect bites seem to be paralyzing muscles.

(ECF No. 1-3, at 7.) On August 3, 2017, prison staff responded that Canady had been scheduled to see the doctor. (Id.)

### E. August 1, 2017 Informal Complaint - NCC17inf1413

On August 1, 2017, Canady submitted an informal complaint that was assigned tracking number NCC-17-INF-01413. (ECF No. 1-3, at 3-4.) In that informal complaint he stated:

> I am being denied adequate medical treatment. 7-25-17, I was seen at sick call for what I think is a broken/fractured bone in the heel of my left foot. X-rays were completed on 7-27-17. At sick call I was diagnosed with plantar fasciitis. Operating Procedure 720.1 states that offenders are to be seen (Emergency Complaints) within 24 hours. I am in severe pain, can't walk on left heel, no crutch, and no pain medications. An MRI is necessary. I need adequate treatment now.

(Id.)   The informal complaint was received in grievance office on

August 3, 2017 and responded to by a nurse on August 7, 2017.

(Id.)   The response stated:

> X-ray from 7/27/17 states: small calcaneal spur.   No
> acute   fracture   or   dislocation   or   soft   tissues
> unremarkable. On 8/4/17, the MD prescribed B/D as needed
> for pain X7 days.   This expires 8/10/17 and it has been
> administered to you accordingly.   If you feel you need
> to be seen again.  Please sign up for sick call.  Thanks!

(Id.)  Canady acknowledged that he received this response back on

August 10, 2017.   (Id.)

### E.   August 31, 2017 Grievance

On August 31, 2017, Canady submitted a grievance wherein he

stated:

> On 8-3-17, an informal complaint (NCC-17-INF-01413)
> and Emergency Grievance (092760) was filed complaining
> that my foot was fractured and I was being denied
> adequate medical treatment.   On 8-4-17, Doctor Dixon
> diagnosed foot with a bone spur.   Infection set in from
> insect bite.   Sent to South Centra Hospital on 8-8-17,
> and prescribed antibiotics.    Infection still has not
> cleared up, and Dr. Dixon has done nothing to treat me
> [for] the pain in my left and right (feet).   (Nurse says
> plantar fasciitis, Dr. Dixon say from x-ray reports –
> bone spurs).   My feet is in pain and I am being denied
> medical treatment to my feet which is in violation of
> the Eighth Amendment . . . .

(ECF No. 1-3, at 8.) Canady requested,

> I want to be treated adequately for the pain in my feet
> and pain in my thigh area cause by infection ASAP,
> without   being   repeatedly   charged   for   NO   medical
> treatment, otherwise legal litigation will follow.    I
> have   demonstrated   and   met   deliberate   indifference
> standard.

(Id.)

13

On September 1, 2017, Defendant Lewis returned the grievance to Canady because she concluded that Canady had not submitted evidence that demonstrated that Canady utilized the informal procedure prior to filing his grievance.   (Id. at 9.)   The directions at the top of the preprinted grievance form direct the inmate to, "Provide information from the informal process: Attach Informal Complaint response or other documentation of informal process."   (Id. at 8.)

Canady pursued an appeal of the intake decision.   (Id. at 16.)  Canady insisted that his grievance should have been processed because, although he had not attached documentation regarding his use of the informal process, he had provided sufficient information for Defendant Lewis to look up his informal complaint and emergency grievance in the computer system.  (Id. at 17-18.)  Canady further asserted that Defendant Lewis was "acting as a wise guy, smart ___, deliberately abused her authority and denied me of my First Amendment right to utilize the grievance process . . . ."  (Id. at 17.)   Additionally, in that appeal, Canady acknowledged that the "day after [the] grievance was filed, [he] went back to the medical unit for pain in [his] feet.  Nurse Butts prescribed 650 mg. of Aspirin twice a day, for five days, and told [him] that she was scheduling [him] to be seen by Doctor Dixon."  (ECF No. 1-3, at 20; ECF No. 1-4, at 35.)   The intake appeal was rejected because

it was submitted past the 5-day time limit for review. (ECF No. 1-3, at 9.)

### III.   **ANALYSIS**

Read in the light most favorable to Canady, the record supports an inference that Defendant Lewis's actions obstructed Canady's access to the grievance procedure by rejecting his May 3, 2017, May 8, 2017, and August 31, 2017 grievances.  Such conduct might excuse Canady's failure to exhaust his administrative remedies under 42 U.S.C. 1997e(a).  Ross v. Blake, 578 U.S. 632, 643-44 (2016) (excusing exhaustion where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation").  However, that is not the issue here.  To survive a motion for summary judgment on his Eighth Amendment claim, Canady must demonstrate that Defendant Lewis acted with deliberate indifference to his serious medical needs.  See Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001).  A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant

15

actually knew of and disregarded a substantial risk of serious harm to his person.   See Farmer v. Brennan, 511 U.S. 825, 837 (1994).  "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."  Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837.  Farmer teaches "that general knowledge of facts creating a substantial risk of harm is not enough.  The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (citing Farmer, 511 U.S. at 837).  Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm . . . . [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'"  Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (quoting Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

16

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that, "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citing Estelle, 429 U.S. at 103-04). However, prisoners are entitled to adequate medical care. Thus, "a plaintiff's receipt of some medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition." Edwards v. Snyder, 478 F.3d 827, 831 (7th Cir. 2007) (quoting Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996)).

Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (citing Gittlemacker v. Prasse, 428 F.2d 1, 6 (3d Cir. 1970)). But, it is also true that, if the treatment by prison medical personnel is not adequate and if a prisoner has pointed that out to the individual rendering the treatment such evidence can be probative of the provider's state of mind. See Edwards, 478 F.3d at 831.

"[A] prison health official who serves solely . . . as a gatekeeper for other medical personnel capable of treating the

condition may be held liable under the deliberate indifference standard if she delays or refuses to fulfill that gatekeeper role." Self v. Crum, 439 F.3d 1227, 1232 (10th Cir. 2006) (internal quotation marks omitted) (emphasis added) (quoting Mata v. Saiz, 427 F.3d 745 (10th Cir. 2005)). Defendant Lewis's job was that of a gatekeeper. However, the record does not show that her actions prevented Canady from accessing medical care for his ailments. Rather, Defendant Lewis's interaction with Canady was limited to responding to informal complaints and grievances. The medical staff at NCC, rather than Defendant Lewis, was charged with providing Canady adequate medical care. Defendant Lewis's rejection of Canady's grievances did not prevent or impair Canady's ability to obtain medical care.

Nevertheless, even though Defendant Lewis is not charged with providing Canady medical care, she may be held accountable for deliberate indifference to his need for medical care. This is so because "a prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition." Vance v. Peters, 97 F.3d 987, 993 (7th Cir. 1996). In this regard, "once an official is alerted to an excessive risk to inmate safety or health through a prisoner's

correspondence, 'refusal or declination to exercise the authority of his or her office may reflect deliberate disregard.'" Perez v. Fenoglio, 792 F.3d 768, 782 (7th Cir. 2015) (quoting Vance, 97 F.3d at 993).

"[N]onmedical officials can be chargeable with . . . deliberate indifference where they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." Arnett v. Webster, 658 F.3d 742, 755 (7th Cir. 2011) (internal quotations omitted) (quoting Hayes v. Snyder, 546 F.3d 516, 525 (7th Cir. 2008)). At summary judgment, this requires Canady to demonstrate that his informal complaints and grievances in their "content and manner of transmission, gave [Defendant Lewis] sufficient notice to alert . . . her to 'an excessive risk to inmate health or safety.'" Id. (quoting Vance, 97 F.3d at 993). Thus, it is necessary to examine those documents.

Nevertheless, in reviewing those documents to assess whether Defendant Lewis acted with deliberate indifference, it is well established that:

> If a prisoner is under the care of medical experts . . ., a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner

was under a physician's care would strain this division of labor.

Iko v. Shreve, 535 F.3d 225, 242 (4th Cir. 2008) (quoting Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)).

## A.   April 19, 2017 Informal Complaint and May 3, 2017 Grievance

Nothing in the April 19, 2017 informal complaint and attachment alerted Defendant Lewis that prison medical personnel were mistreating or not treating Canady.  Although Canady insisted he had a staph infection, the submissions reflected that Dr. Dixon, and subsequently Nurse Practitioner Bendall, concluded that he simply had dry skin.  Under these circumstances, Defendant Lewis was entitled to rely on the medical expertise of Dr. Dixon and Nurse Practitioner Bendall.  See Iko, 535 F.3d at 242 (quoting Spruill, 372 F.3d at 236).

In his May 3, 2017 grievance, Canady complained about Dr. Dixon's "refusing to treat me for what I believe to be MRSA because I would not agree with his diagnosis of dry skin" and Defendant Lewis's refusal to process all the attachments to his informal complaint described above.  (ECF No. 1-2, at 10.)  Rather than pass the grievance on to the Warden or other prison personnel for investigation, Defendant Lewis rejected the grievance as a request for services and because Canady had provided insufficient information.  (Id. at 11.)  Defendant Lewis's rejection of the grievance is particularly opaque and left Canady confused as to

20

the shortcoming of his grievance. Moreover, the content of the grievance could be considered sufficient to have alerted Defendant Lewis to the possibility that Canady faced a substantial risk of serious harm from the inattention of prison medical personnel.

### B.   May 8, 2017 Grievance

On or about May 8, 2017, Canady filed another grievance about Defendant Lewis's interference with his filing of informal complaints by failing to stamp and process his attachments to his informal complaint. (Id. at 12.) Defendant Lewis returned the grievance to Canady unprocessed and marked the box, "Does not affect you personally (This issue did not cause you personal loss or harm)." (Id. at 13.) That observation by Lewis is quite ridiculous. A reasonable jury could find that this response was an intentional effort by Defendant Lewis to obstruct Canady's effort to grieve her actions towards his prior submission. It could also support an inference that Defendant Lewis was acting with deliberate indifference to Canady's serious medical needs.

### C.   August 31, 2017 Grievance

On August 31, 2017, Canady submitted a grievance wherein he complained that:

> On 8-3-17, an informal complaint (NCC-17-INF-01413) and Emergency Grievance (092760) was filed complaining that my foot was fractured and I was being denied adequate medical treatment. On 8-4-17, Doctor Dixon diagnosed foot with a bone spur. Infection set in from insect bite. Sent to South Centra Hospital On 8-8-17, and prescribed antibiotics. Infection still has not cleared up, and Dr. Dixon has done nothing to treat me

> of the pain in my left and right (feet). (Nurse says
> plantar fasciitis, Dr. Dixon say from x-ray reports –
> bone spurs). My feet is in pain and I am being denied
> medical treatment to my feet which is in violation of
> the Eighth Amendment . . . .

(ECF No. 1-3, at 8.) Defendant Lewis returned this grievance to Canady unprocessed because Canady had failed use the informal process to resolve his complaint. That response is arbitrary and, in combination with Defendant Lewis's other responses could be evidence of deliberate indifference.

However, the grievance itself does not support a finding that Canady's foot problems and infections were being ignored. For his foot problems, Canady had been examined by a nurse, Dr. Dixon, and had x-rays taken. For his infection, Canady had been sent to a hospital and provided with antibiotics. Thus, Defendant Lewis would be justified in believing that medical staff were not ignoring Canady's medical problems.

Thus, there are disputes of fact respecting whether Defendant Lewis was subjectively aware that refusing to process Canady's grievance material exposed Canady to a substantial risk of serious harm. Parrish ex rel. Lee, 372 F.3d at 303 (quoting Rich, 129 F.3d at 340 n.2).

## IV. CONCLUSION

Claim 1 against Defendant Dixon will be dismissed without prejudice. Defendant Lewis's Motion for Summary Judgment (ECF No. 40) will be denied. This same record demonstrates that Canady

is not entitled to judgment in his favor.  Accordingly, Canady's Motion for Partial Summary Judgment (ECF No. 36) will be denied. Furthermore, the record suggests that Canady may have a viable claim.  The Court will appoint counsel to prosecute the claim.

The Clerk is directed to send a copy of this Memorandum Opinion to Canady and counsel of record.

/s/ REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  February 28, 2022

23